STATE EX REL. HELMER M. FEROE v. JOSEPH A. POIRIER.[1]

May 26, 1933.

No. 29,488.

*Paul J. Thompson, Edgerton, Dohs & Edgerton,* and *Helmer M. Feroe,* for appellant (relator below).

*Harry H. Peterson,* Attorney General, and *Joseph A. Poirier,* for respondent.

[1]Reported in 248 N. W. 747.

*STONE, Justice.*

Quo warranto issued in the district court to try title to the office of a member of the rural credit bureau. Respondent Poirier was appointed by attorney general Peterson January 3, 1933, to supersede relator Feroe, who had been serving as the assistant attorney general member of the department since January 7, 1929, under appointment by former attorney general Youngquist. Relator appeals from a judgment quashing the writ.

The decision was on the ground that the lawyer member of the rural credit bureau serves at the pleasure of the attorney general, a view in which we concur.

■ The Minnesota rural credit bureau was established by L. 1923, p. 246, c. 225. It was to consist of three members, two appointed by the governor, and the third, to be an assistant attorney general, by the attorney general. Each member had a fixed term of six years, subject to removal for cause.

The act reorganizing the state government under a commission of administration and finance (L. 1925, p. 756, c. 426) created "The Department of Rural Credit" under a rural credit bureau of three members, the chairman and secretary to be appointed by the governor "with the advice and consent of the senate, without term," and the third member to be an assistant attorney general and appointed by the attorney general "without term."

The attorney general insists that the phrase "without term" means that the members of the rural credit bureau serve at the pleasure of the appointing power. The relator's submission is that the appointment is for the life or good behavior of the appointee, subject to the power of removal for cause reserved by L. 1923, p. 246, c. 225, § 2, to be considered later.

The law of 1925 intended a thoroughgoing reorganization. Expressly, by art. I, § 1, "all of said departments and all officials and agencies of the state government" were subjected to the new law. By art. XX, § 2, all inconsistent former legislation was "superseded, modified, or amended to conform to and give full force and effect to the provisions of this act."

By art. XV the original Minnesota rural credit bureau was abolished. The new "department" was created to take the place of the old bureau, but to be under "supervision and control" of a new rural credit bureau, the members to serve "without term." There is no express provision, one way or the other, as to occasion for or power of removal.

But the intent that the phrase "without term" should subject each member to removal at the pleasure of the appointing power is plain when the whole law is considered. Certain aspects of the reorganization scheme stand out prominently. Some of the old offices were abolished and their functions transferred to new hands. Under art. XVIII, § 1, the comptroller took over the office of public examiner, the latter being abolished, as was also the original rural credit bureau by art. XV. In like fashion the old state securities commission was undone by art. VIII, §§ 1, 5, its functions being taken over by the new "securities division" of the department of commerce. This abolition of old offices, although simultaneously new ones were created with the same or similar functions, was a good way to forestall any attempt by an incumbent of an abolished office to claim the benefit of an unexpired term.

In another category are the old offices and departments which were expressly continued—the commissioners of forestry and of fish and game (art. IV); the department of dairy and food (art. VI); health (art. IX); education (art. X); highways (art. XI); labor and industry (art. XII); the board of control (art. XIII); the tax commission (art. XIV); live stock sanitary board (art. XVI); and state agricultural society (art. XVII). The effect of such preservation of existing officials and departments was doubtless (in many cases expressly so) to save for each and all of them the benefit and effect of existing law.

Under art. V the department of drainage and waters took over the powers and duties of the commissioner of drainage and waters. The commissioner is appointed by the governor, with the advice and consent of the senate, "without term." In similar fashion, under art. XV, the department of rural credit was established in lieu of the original rural credit bureau. The chairman and secretary are

appointed by the governor, with the advice and consent of the senate, but "without term." The third member, an assistant attorney general, is appointed "without term" by the attorney general.

The purpose of the law of 1925 was so to reorganize and simplify the state government as to make it safe for the taxpayers. It was to be achieved through consolidating departments, and increasing the power, and consequently the responsibility, of the governor for management of the state's business. The members of the dominating commission of administration and finance serve at his pleasure. Art. III, § 2. The thought was that the centralization of responsibility in the governor, more than anything else, would result in economy of administration and celerity and economy of needed action.

Wholly foreign to any such plan is the idea that one governor or one attorney general can, by his own selection, impose upon his successors in office appointees who may be at the outset, or later become, incompetent or distasteful to his superiors at the time being. That rather persuasive inconsistency aside, there has long been an accepted formula to express the term of an officer holding as relator insists he held. Always, where it is the purpose, it is put in the phrase "during good behavior" (U. S. Const. art. III, § 1) or words of precisely the same fixed tenor. Never, as far as counsel inform us, has the ambiguous phrase "without term" been used to indicate that purpose. Nor do lawmakers seem to have used it for any other. Its ambiguity is inexcusable. It is impossible for an officer, if he serves at all, to serve without term. His term may be indefinite. It may be terminable at somebody's pleasure. But it is a term of office notwithstanding.

These considerations make it plain that when in the 1925 law the appointment of members of the rural credit bureau "without terms" was provided for, it meant that they should serve without definite or fixed term. The result is that they hold office subject to the will of the appointing power; in the case of relator, at the pleasure of the attorney general. Having been an assistant attorney general, it would be strange indeed if he alone, of the numerous

assistant attorneys general, could be considered as enjoying life tenure, whereas all the others serve at the pleasure of the attorney general at the time being.

There is no help for relator in art. 13, § 2, of the state constitution. It authorizes the legislature to provide for the removal of inferior officers "for malfeasance or nonfeasance in the performance of their duties." We need not attempt the construction of that provision nor its discussion otherwise than to observe, what is obvious, that it does not limit the power of the legislature to create offices to be filled by appointment, the occupants to serve at the pleasure of the appointing power.

■ In L. 1923, p. 246, c. 225, the original charter of the rural credit bureau, it was provided (§ 2) that any member (all were to serve for fixed terms of six years) could be removed for cause by the appointing power, but only upon written charges and after an opportunity for hearing in defense. That provision was not carried over into the reorganization act of 1925. It is inconsistent therewith in its application to the new department of rural credit and the managing bureau. Therefore it must be considered as repealed by art. XX, § 2, of the 1925 law.

The judgment under review is affirmed.